UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAVE CONSULTING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRUVEN HEALTH ANALYTICS INC., <br><br> Defendant. | Case No. 15-cv-02177-SI <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FURTHER AMEND COMPLAINT** <br><br> Re: Dkt. No. 138 |

Plaintiff Cave Consulting Group, Inc.'s motion for leave to further amend its complaint is scheduled for a hearing on February 17, 2017. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS CCGroup's motion for leave to amend its complaint. <u>The case management conference scheduled for 3 p.m. on February 17, 2017 remains on calendar</u>.

**BACKGROUND**

On May 14, 2015, plaintiff Cave Consulting Group, Inc. ("CCGroup") sued defendant Truven Health Analytics, Inc. ("Truven"), alleging infringement of U.S. Patent No. 8,340,981 and U.S. Patent No. 8,768,726. Dkt. No. 1 ¶ 4. CCGroup amended its complaint several times. Most recently, CCGroup sought to file a third amended complaint, which withdrew the claims regarding the '981 patent and added claims of indirect infringement of the '726 patent. Dkt. No. 95. The Court granted leave to amend on December 22, 2016. Dkt. No. 136.

On January 9, 2017, CCGroup filed a motion for leave to further amend the third amended complaint to add claims for misappropriation of trade secrets, unfair competition, and intentional

interference with prospective economic advantage. CCGroup claims the further amendment is necessary because CCGroup discovered, in e-mails produced by Truven in December 2016, evidence that Truven employees obtained CCGroup's trade secrets and used the trade secrets to prevent CCGroup from winning a potential client from Truven.

Specifically, the e-mails purportedly show that CCGroup was competing for one of Truven's clients in 2014. Dkt. No. 139, Ex. 3, 4. These e-mails show that a Truven account director informed a Truven vice president that the account might be in jeopardy, and the vice president asked if the account director could obtain the materials CCGroup had presented to the client. *Id*. The account director responded that he could. *Id*. The account director first asked an employee at the client for copies of the presentation materials but the client declined to turn over any materials. *Id.* Ex. 4. The account director then reached out to a contact at another business that had formerly used CCGroup's services. *Id*. Ex. 6. The contact e-mailed the account director a copy of CCGroup's confidential presentation materials. *Id*.

According to CCGroup, the confidential presentation materials give a detailed overview of how CCGroup's physician efficiency software program operates. The presentation includes an example analysis for a particular practice area, demonstrating how CCGroup's methodology generates data that competitors' programs do not. *Id*. The account director e-mailed the presentation to the vice president and asked the vice president to keep the presentation confidential. *Id*. According to CCGroup, Truven used CCGroup's presentation to prepare for the meeting with the client, and Truven ultimately retained the client.

CCGroup asked Truven to consent to the proposed amendment and Truven declined. Accordingly, CCGroup filed this motion for leave to amend its complaint to add claims for misappropriation of trade secret, unfair competition, and intentional interference with prospective economic advantage.

**LEGAL STANDARD**

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," representing a public policy strongly in favor of amendments. Fed. R. Civ. P. 15(a)(2); *Chodos v.*

*West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("It is generally our policy to permit amendment with 'extreme liberality' . . . ."). A motion for leave to amend will ordinarily be granted unless the motion "is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic." *Id.* "Generally, the court engages in this analysis with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 880 (9th Cir. 1999).[1]

## DISCUSSION

### I. Futility of Trade Secret Amendment

Truven argues that granting CCGroup leave to allege a misappropriation of trade secrets claim would be futile for three reasons.[2] First, Truven argues that CCGroup's alleged trade secrets consist entirely of material that was publicly disclosed in patents, news stories, and marketing material. Second, Truven contends that CCGroup failed to maintain the secrecy of its purported trade secrets because CCGroup used the purported trade secrets when consulting actual and prospective clients. Third, Truven argues that CCGroup's trade secret allegations contradict previous allegations that the same information has been disclosed in the public domain.

Generally courts grant leave to amend freely, but leave may be denied if the proposed amendment would be futile. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). The test for futility is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citation omitted). Accordingly, the proposed amended complaint must allege "enough facts to state a

---

[1] Truven contends that because the deadline for fact discovery has passed, Rule 16 governs the analysis of CCGroup's motion, and thus CCGroup is required to demonstrate under Rule 16 that it has good cause to amend the complaint. *See* Fed. R. Civ. P. 16(b)(4) (requiring a party demonstrate good cause to amend a scheduling order). The Court finds that the Rule 15 standard applies because the Court never set a deadline for filing amended pleadings. *See Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-4984 JST, 2015 WL 5064076, at *1 n.2 (N.D. Cal. Aug. 26, 2015) (finding that Rule 15 applied when court did not issue scheduling order). Further, the Court notes that discovery deadlines have been extended and that the Court will be setting a new discovery and pretrial schedule at the February 17, 2017 case management conference.

[2] Aside from generally claiming that amendment would be prejudicial, Truven fails to specifically address CCGroup's request to add claims for unfair competition and intentional interference with prospective economic advantage.

3

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Public Disclosure

Truven argues that amendment would be futile because CCGroup's purported trade secrets are already in the public domain. To support its argument, Truven cites a number of patents and publications, claiming each shows that the information CCGroup seeks to protect is publicly available. This argument is flawed for two reasons.

First, "[g]enerally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003)). The exception is for a document of unquestioned authenticity that the complaint refers to and relies upon. *Id*. Here, Truven cites patents (Dkt. No. 145, Ex. 1, Ex. 3), marketing material (*Id.*, Ex. 2), and press releases (*Id.*, Ex. 4, 5) as evidence that CCGroup's purported trade secrets are in fact publicly known. None of this material is appropriate for consideration. *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1191 (W.D. Wash. 2015) ("The standard that applies to a Rule 12(b)(6) motion is fatal to Defendants' attacks on T–Mobile's trade secret claim. Huawei prefers that the court ignore portions of T–Mobile's complaint and rely instead on facts not mentioned in that complaint."). Thus, Truven's argument fails because it depends entirely on material outside the four corners of the complaint.

Second, a court reviewing a complaint in this context must "assume all facts and inferences in favor of the nonmoving party." *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003). Viewed in this light, the Court finds that CCGroup has sufficiently alleged that the presentation materials constitute trade secrets. CCGroup alleges that the presentation materials contain detailed information about CCGroup's methodologies and functionality of particular software products, and that this information is highly sensitive commercial information which is not publicly known. Dkt. No. 139, Ex. 1 ¶¶ 29-30 (Proposed TAC). CCGroup also alleges that Truven surreptitiously acquired the presentation and consciously limited its circulation. *Cf. T-Mobile USA, Inc.*, 115 F. Supp. 3d at 1192. ("Because it is unusual to steal what one can freely obtain in the public domain,

4

it is plausible to infer that Huawei was stealing trade secret information."). Taken as true, these allegations suggest that CCGroup developed trade secret material and that Truven intended to appropriate this material.

### B. Failure to Maintain Secrecy

Truven argues that CCGroup failed to maintain the secrecy of its purported trade secrets because it shared the purported secrets with actual and prospective clients. However, CCGroup alleges that the purported trade secrets were marked with a bold admonition stating they are confidential and should not be shared. Dkt. No. 139, Ex. 1 ¶ 24, Ex. 6. CCGroup also alleges that Truven first asked for a copy of the materials from an employee of the client company, but the employee declined to turn over any materials, suggesting the employee understood the presentation to be confidential. *Id*. ¶ 20. Further, CCGroup alleges that when a Truven account manager did obtain the trade secret materials through a contact, the account manager's conduct further suggested the materials were understood to be confidential. *Id.* ¶ 22 ("***Please, please only have this run past your eyes as my contact requested that under no circumstances should this be distributed within Truven***.") (original emphasis). The Court finds that these allegations are sufficient at the pleadings stage to show that CCGroup took steps to maintain secrecy.

### C. Contradictory Claims

Truven also contends CCGroup should not be granted leave to amend because the trade secret allegations contradict CCGroup's allegations that Truven infringed the '726 patent. Truven notes that CCGroup has asserted that the '726 patent renders its MarketBasket methods "now 100% transparent for the public to see," Dkt. No. 145, Ex. 5 (CCGroup press release) and Truven argues that "CCGroup's new causes of action contradict its previous positions by now arguing that the methods in MarketBasket no longer embody what is publicly disclosed in the '726 Patent, and, instead, are non-public trade secrets." Dkt. No. 146 at 6:26-28. CCGroup responds that disclosing the methodology is not the same as disclosing specific applications of the methodology, and CCGroup has alleged that the confidential presentation contains specific applications that are

5

not publicly disclosed in the patent or otherwise.

The Court finds that CCGroup's trade secret allegations are not necessarily inconsistent with its infringement allegations and previous positions. Further, to the extent Truven's argument relies on material outside the pleadings, Truven has raised factual arguments that are inappropriate at this stage of review.

## II.   Prejudice

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 187 (9th Cir. 1987). The prejudice "must be substantial." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990). "Bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to 'facilitate a proper disposition on the merits.'" *Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California,* 648 F.2d 1252, 1254 (9th Cir. 1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

Truven argues it will be prejudiced if the Court allows CCGroup to file the amended complaint because the new trade secret claims will likely require additional interrogatories and focused document requests. However, the "mere prospect of additional discovery is insufficient" to demonstrate prejudice. *Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2013 WL 5592620, at *14–15 (N.D. Cal. Oct. 10, 2013); *see also Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (additional discovery does not constitute undue prejudice). Further, as CCGroup notes, there will be no need to re-depose witnesses because Truven canceled all of its depositions pending resolution of this motion. The Court will address the discovery schedule at the case management conference on February 17, 2017.

## III.   Undue Delay

Truven argues that leave to amend should not be granted because "CCGroup did not diligently pursue discovery." Dkt. No. 146 at 9. "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to

amend." *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (original emphasis).

The Court finds that there has not been undue delay. As CCGroup notes, it did not learn of the trade secret claims until the December 2016 document production, and thus it could not have diligently pursued discovery of the trade secret claims prior to that production. *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amending in the original pleading."). While Truven argues CCGroup was dilatory in serving its discovery requests for e-mails, the record suggests that CCGroup's discovery requests were in fact timely because the Court ordered that email production requests occur after requests for initial disclosures and basic documentation. Dkt. No. 50 ¶ 6.

Truven also asserts that the Court should view CCGroup's request for leave warily because CCGroup has already amended its complaint three times. However, previous amendments carry little weight when the current amendment involves newly discovered information. *See Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for leave to amend its complaint. The case management conference scheduled for 3 p.m. on February 17, 2017 remains on calendar.

**IT IS SO ORDERED**.

Dated: February 15, 2017

SUSAN ILLSTON
United States District Judge