UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAVE CONSULTING GROUP, INC., <br> Plaintiff, <br> v. <br> TRUVEN HEALTH ANALYTICS INC., <br> Defendant. | Case No. 15-cv-02177-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS NON-PATENT CLAIMS** <br><br> Re: Dkt. No. 167 |

On April 14, 2017, the Court held a hearing on defendant's motion to dismiss the second, third, fourth, fifth, and sixth causes of action (the "non-patent claims") from plaintiff's third amended complaint. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendant's motion, and GRANTS leave to amend. **Any amended complaint must be filed no later than May 8, 2017.**

**BACKGROUND**

On May 14, 2015, plaintiff Cave Consulting Group, Inc. sued defendant Truven Health Analytics, Inc., alleging infringement of U.S. Patent No. 8,340,981 and U.S. Patent No. 8,768,726. Dkt. No. 1 ¶ 4. CCGroup's complaint was amended once as of right on July 15, 2017 and again by stipulation on November 18, 2015. Leave to file a Third Amended Complaint was granted on December 22, 2016, but prior to filing that complaint plaintiff sought and was granted (over defense opposition) a further amended complaint. On February 21, 2017, CCGroup filed a third amended complaint ("TAC"), adding claims for misappropriation of trade secret under the California Uniform Trade Secret Act ("CUTSA"), the Michigan Uniform Trade Secret Act ("MUTSA"), and the federal Defend Trade Secret Act ("DTSA"); claims for unfair competition

1  under the California Unfair Competition Law, California common law, Michigan common law,
2  and the federal Lanham Act; and claims for intentional interference with prospective economic
3  advantage under California common law and Michigan common law. TAC (Dkt. No. 159) ¶¶ 65-
4  92.

The additional claims against Truven arise from conduct that apparently occurred in Pennsylvania and Rhode Island. In December 2016, Truven produced in discovery e-mails that allegedly show that in 2014 CCGroup was competing for a Truven client located in Pennsylvania. TAC ¶¶ 14-36. The TAC alleges that after Truven's senior account director informed a Truven vice president that the account might be in jeopardy, the vice president asked if the account director could acquire the materials CCGroup had presented to the client. *Id.* The account director responded that he could. *Id.* The account director first asked one of the client's employees for copies of the presentation materials but the employee declined to turn over any materials. *Id.* The account director then reached out to a contact in Rhode Island who worked at a business that had formerly used CCGroup's services. *Id.* The contact e-mailed the account director a copy of CCGroup's confidential presentation materials and the account director e-mailed the presentation to the vice president, asking the vice president to keep the presentation materials confidential. *Id.*

According to CCGroup, the confidential presentation materials contain trade secret information about CCGroup's software products. *Id.* ¶ 29. Upon obtaining the presentation materials, Truven's vice president and account manager reviewed and discussed them. *See id.* ¶¶ 27, 28. According to CCGroup, Truven then used the confidential materials to prepare for a meeting with the client that apparently took place in Pennsylvania in August 2014. *Id.* ¶ 35. The client chose to remain with Truven. *Id.*

After the client meeting, a Truven vice president shared the confidential materials with another Truven employee in April 2015. *Id.* ¶ 36. CCGroup alleges that Truven continues to use the alleged trade secrets to date. Specifically, CCGroup claims that "[o]n information and belief, Truven has continued to use CCGroup's IP after securing the [client's] business," and "[o]n information and belief, Truven has also used CCGroup's IP in competing against CCGroup for

1 potential customers other than [the client], including for the purpose of developing products and
2 modifying existing products to be more competitive with CCGroup's offering." *Id*. ¶ 36.

## LEGAL STANDARDS

### I. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a complaint for failure to state personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). When the motion is based only on the pleadings, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id*. Allegations that are unchallenged are taken as true and conflicts between the pleadings are resolved in plaintiff's favor. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Because "the issue of personal jurisdiction with respect to non-patent counts is not intimately linked to patent law," Ninth Circuit law determines whether personal jurisdiction obtains. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

### II. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences

3

in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. Jurisdiction

#### A. Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction for plaintiff's non-patent claims.[1] Mot. (Dkt. No. 167) at 15. Plaintiff's opposition to defendant's motion only argues that the Court has general and specific jurisdiction. However, at oral argument plaintiff contended that the Court could also exercise pendent personal jurisdiction over plaintiff's non-patent claims. As discussed below, the Court finds that exercising pendent personal jurisdiction over plaintiff's claims is appropriate in this case.[2]

"If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." *Picot v. Weston*,

---

[1] In its Answer to CCGroup's First Amended Complaint, Truven admits that the Court has personal jurisdiction over CCGroup's patent claims. Dkt. No. 30 at 2. At oral argument, CCGroup contended that this admission also renders Truven subject to jurisdiction for the non-patent claims. The Court disagrees and finds that Truven's jurisdictional admission was made in the context of the patent claims and thus is limited to the patent claims.

[2] The Court finds that the TAC does not allege a basis for general personal jurisdiction over the non-patent claims because plaintiff does not allege that defendant is "essentially at home" in California as required by *Daimler AG v. Bauman*, 134 S. Ct. 746, 762 (2014), nor does plaintiff allege any suit-related contacts sufficient to establish personal jurisdiction. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (holding a defendant's knowledge that out-of-state conduct will cause harm in the forum state is insufficient to establish required minimum contacts).

4

780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). "Whether to exercise pendent personal jurisdiction is committed to the sound discretion of the district court." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004).

Defendant does not dispute that the Court has personal jurisdiction over plaintiff's patent infringement claims. Exercising pendent personal jurisdiction over the non-patent claims is appropriate because of the factual overlap between the patent and non-patent claims, and because it is in the interest of judicial efficiency. Both the patent and non-patent claims concern the same products and technology: defendant allegedly misappropriated trade secrets pertaining to plaintiff's MarketBasket system and plaintiff's MarketBasket system practices the '726 patent that defendant is allegedly infringing. Plaintiff's Rule 26(a) disclosures for the patent claims also identify as possible witnesses six of defendant's employees who also allegedly misappropriated plaintiff's trade secrets. In *Action Embroidery*, the Ninth Circuit emphasized that the interests of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties" animate the pendent personal jurisdiction doctrine. *Action Embroidery*, 368 F.3d at 1180. In order to avoid multiple lawsuits involving the same parties and products, the Court finds it appropriate to exercise pendent personal jurisdiction over plaintiff's non-patent claims.

### B. Subject Matter Jurisdiction

On April 19, 2017, while the Court held a supplemental claim construction hearing, the parties appeared to agree that the Court has diversity jurisdiction over the state non-patent claims under 28 U.S.C. § 1332. If plaintiff files an amended complaint, diversity jurisdiction should be properly pled.

## II. Federal Claims

### A. Defend Trade Secrets Act

Defendant argues that plaintiff fails to state a claim under the Defend Trade Secrets Act ("DTSA") because the alleged misappropriation occurred before the DTSA's passage. Mot. (Dkt.

5

No. 167) at 4. Plaintiff concedes that misappropriation occurring before the DTSA's passage is not actionable but argues that this "does not foreclose CCGroup from pursuing claims against Truven's use of CCGroup's trade secrets <u>after</u> the enactment of the DTSA." Mot. (Dkt. No. 174) at 19.

Congress enacted the DTSA May 11, 2016. Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat 376. The DTSA only covers acts occurring "on or after the date of the enactment of this Act." *Id*. The Act creates a cause of action for the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A "trade secret" includes "all forms and types" of information that derives value from being secret and that the owner took reasonable measures to keep secret. *Id*. at § 1839(3)(A)(B). "Misappropriation" consists of (a) "acquisition of a trade secret" by a person who knows or should know the secret was improperly acquired or (b) "disclosure or use of a trade secret of another without express or implied consent." § 1839(5)(A)(B).

The Act's text contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use. *Id*. at § 1839(5) (defining "misappropriation" as involving acquisition, disclosure, or use of a trade secret). Nothing suggests that the DTSA forecloses a use-based theory simply because the trade secret being used was misappropriated before the DTSA's enactment. As the *Adams Arms* court noted, "Congress omitted from DTSA the following language from Section 11 of the [Uniform Trade Secret Act]: 'With respect to a continuing misappropriation that began prior to the effective date, the [Act] also does not apply to the continuing misappropriation that occurs after the effective date.'" *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 16-1503, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016) (quoting Unif. Trade Secrets Act, § 11).

Defendant cites *Adams Arms* for the proposition that "the court dismissed a DTSA claim because the alleged trade secrets were acquired before the effective date of the DTSA." Mot. (Dkt. No. 167) at 4. In *Adams Arms*, the plaintiff was a manufacturer of military rifles and the defendant company approached the plaintiff about working together on a bid to supply arms to the Peruvian military. The parties signed a nondisclosure and confidentiality agreement, and the

plaintiff provided its confidential and proprietary information to the defendant in 2014 and 2015, and the defendant used that information to secure the Peruvian military contract in May 2016. The court held that the plaintiff's pre-enactment acquisition claim failed as a matter of law but that the plaintiff's post-enactment disclosure claim was viable:

> The Complaint specifically alleges that UWS signed a contract with the Peruvian military in late May or early June 2016, which was after DTSA's effective date, and that the contract used "all the designs, specifications, and processes divulged under false pretenses by [Adams Arms]." That allegation supports an inference that Defendants disclosed Adams Arms' trade secrets after the effective date. Through discovery, the parties may clarify the timing and nature of any such disclosures.

*Adams Arms*, 2016 WL 5391394, at *6 (internal citation omitted).

Defendant also cites *Avago Technologies* for the proposition that "activity that continued past the DTSA enactment date . . . is not sufficient to allege a post-DTSA claim." Mot. (Dkt. No. 167) at 5. In *Avago Technologies*, the plaintiff alleged that the defendant obtained the plaintiff's confidential and proprietary information and used that information in patent applications filed prior to the enactment of the DTSA. The defendant moved to dismiss the DTSA claim on the ground that all of the conduct at issue predated the DTSA. In response, the plaintiff argued that the DTSA claim was viable because the defendant continued to use the confidential information by prosecuting the same patent applications after the enactment of the DTSA. *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, 16-3737 JCS, 2017 WL 412524, at *3-4, 8 (N.D. Cal. Jan. 31, 2017). The court dismissed the DTSA claim, reasoning:

> As currently alleged, the confidential information at issue was disclosed when the Avago Applications were published, before the DTSA came into effect. nPP has not cited any authority suggesting that the DTSA allows a misappropriation claim to be asserted based on the continued use of information that was disclosed prior to the effective date of the statute. Simply alleging that the same information was disclosed "again" is not sufficient to avoid this result as "disclosure," by definition, implies that the information was previously secret.

*Id*. (citation omitted). The *Avago* court distinguished *Adams Arms* by noting that in *Adams Arms*, "there were allegations that specific information had been disclosed (apparently for the first time) after the effective date of the DTSA and therefore, the court allowed the claim to go forward." *Id.* at *9.

Here, plaintiff alleges that defendant acquired the trade secrets in 2014 and used those

7

trade secrets in a 2014 client meeting. TAC (Dkt. No. 159) ¶¶ 15-34. Plaintiff also alleges that "on April 1, 2015, Kristel Schimmoller, a Truven Vice President who was copied on Atkin's July 17, 2014 email about [the client] being 'ready to sign an agreement' with CCGroup, forwarded the CCGroup Confidential Presentation Materials to Mark Gillespie, another Truven employee." TAC (Dkt. No. 159) ¶ 36. However, all of this conduct predates the enactment of the DTSA. Plaintiff generally alleges "[o]n information and belief, Truven has also used CCGroup's IP in competing against CCGroup for potential customers other than [the Pennsylvania client], including for the purpose of developing products and modifying existing products to be more competitive with CCGroup's offerings." *Id*. This allegation is insufficient to state a claim, as plaintiff makes no specific allegations that defendant used the alleged trade secrets after the DTSA's May 11, 2016 enactment. The Court finds that without facts about when post-enactment use occurred and whether the information disclosed was new or somehow different from the prior misappropriation, plaintiff has failed to state a claim under the DTSA. Accordingly, plaintiff's third cause of action is dismissed. Although the Court is skeptical about doing so at this late date in the litigation, leave to amend is granted. **Any amended complaint must be filed no later than May 8, 2017.**

### B. Lanham Act

Defendant argues that plaintiff fails to state a claim under 15 U.S.C. § 1125(a) because plaintiff "makes no specific, factual allegations that Truven represented false or misleading facts to [the client] or any other third party." Mot. (Dkt. No. 167) at 5. The TAC alleges, "On information and belief, in competing against CCGroup through the use of CCGroup's IP, Truven has made false or misleading descriptions and/or representations of fact regarding the nature, development, quality, and/or origin[] of the products Truven offers in competition with CCGroup's offering." TAC ¶ 82.

A plaintiff asserting a claim under 15 U.S.C. § 1125(a) must show that a defendant made a false statement of fact in a commercial transaction about its own or another's product. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate

falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id*. (citation omitted).

Plaintiff argues that it pled facts that support a plausible inference that defendant made misrepresentations during a client meeting. Opp'n (Dkt. No. 174) at 20-21. Plaintiff notes that the TAC alleges that defendant and plaintiff were competing for the same client's business, that defendant became concerned plaintiff would win the client, that defendant sought out inside information on plaintiff's product, that defendant acquired the information from a source, that defendant was impressed by the information and used the information to prepare for the client meeting, and that defendant ultimately retained the client. Plaintiff argues that these allegations support an inference that defendant misrepresented either its product or plaintiff's product at the client meeting in an effort to retain the client.

The Court disagrees. Plaintiff has not alleged that Truven made any specific false or misleading misrepresentations of fact. Plaintiff's allegation, that "in competing against CCGroup through the use of CCGroup's IP, Truven has made false or misleading descriptions and/or representations of fact regarding the nature, development, quality, and/or origin[] of the products Truven offers in competition with CCGroup's offering," (TAC ¶ 82) is simply a formulaic recitation of the elements of a cause of action. The Court is also not persuaded that plaintiff has alleged facts from which the Court could reasonably infer that defendant made any misrepresentations about its own product or plaintiff's product in the client meeting. From the facts alleged, it is plausible that defendant used the information from plaintiff's presentation materials to make truthful representations about differences between the parties' products or used the information to determine which features of its own product should be emphasized. *See Twombly*, 550 U.S. at 564-66. Accordingly, the Court concludes that plaintiff has failed to state a claim under the Lanham Act and dismisses this claim. Although the Court is skeptical about doing so at this late date in the litigation, leave to amend is granted. **Any amended complaint must be filed no later than May 8, 2017.**

**III. State Claims**

Plaintiff asserts four claims under California law: misappropriation of trade secrets under the California Uniform Trade Secret Act ("CUTSA"), unfair competition under the California Unfair Competition Law ("UCL"), unfair competition under California common law, and intentional interference with prospective economic advantage under California common law. TAC (Dkt. No. 159) ¶¶ 67, 77, 88. Plaintiff asserts three claims under Michigan law: misappropriation of trade secret under the Michigan Uniform Trade Secrets Act ("MUTSA"), unfair competition under Michigan common law, and tortious interference with economic expectancy under Michigan common law. *Id.*

**A. Extraterritoriality**

Defendant moves to dismiss the state claims on the ground that California and Michigan statutory and common law do not apply to conduct that occurred in Rhode Island and Pennsylvania, where there are no allegations that conduct occurred in California or Michigan. Plaintiff argues that the facts support extraterritorial application of California law, and plaintiff's opposition does not address the extraterritorial application of Michigan law.

**1. California**

Plaintiff alleges statutory violations of the California Unfair Competition Law California and the California Uniform Trade Secrets Act. Plaintiff also alleges the common law torts of unfair competition and intentional interference with prospective economic advantage.

**a. UCL Claim**

When a plaintiff resides in California, the UCL may apply to out-of-state conduct, especially when the plaintiff suffered in-state harm. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999); *see also Speyer v. Avis Rent A Car System, Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) ( The "UCL applies to wrongful conduct that occurs out-of-state but results in injury in California."). In contrast, the UCL may not apply to out-of-state conduct when

a non-resident plaintiff brings a claim. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207-08 (2011).

Defendant relies on *Sullivan v. Oracle* for the proposition that the UCL does not apply to out-of-state conduct. However, *Sullivan* involved residents of Arizona and Colorado who brought UCL claims based upon conduct that occurred in Arizona and Colorado. Plaintiff, in contrast, resides in California and alleges that it suffered harm in California. Accordingly, may bring a claim under the UCL. *Adobe Sys.*, 125 F. Supp. 3d at 972 ("Accordingly, Adobe alleges that it is a California resident that has suffered harm in California as a result of Blue Source's actions. Even assuming that Blue Source's sales of infringing products occurred out-of-state, Adobe—as a California resident who allegedly suffered harm in California—may still properly bring a cause of action under the UCL.").

### b. CUTSA Claim

The Court concludes that plaintiff's CUTSA claim is barred by the extraterritoriality doctrine. This doctrine presumes that "the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999). The presumption is only overcome when "a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute." *Id*. (citing *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1058-59 (1999)).

Neither party cites case law specifically addressing CUTSA's extraterritorial application. The Act's express purpose is to "make uniform" state trade secret law. Cal. Civ. Code § 3426.8. No legislative history suggests the Act was intended to have extraterritorial effect. Further, "the California Supreme Court has made clear that such limitations are *presumed to be present* unless the legislature's contrary intention 'is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) (original emphasis) (citation omitted). That presumption is not rebutted here. Accordingly, plaintiff's CUTSA claim is dismissed. Although

11

the Court is skeptical about doing so at this late date in the litigation, leave to amend is granted. If plaintiff wishes to reassert a claim under the CUTSA, plaintiff must allege a factual and legal basis for such a claim.[3] **<u>Any amended complaint must be filed no later than May 8, 2017.</u>**

### c. Common Law

Plaintiff alleges California common law claims for unfair competition and intentional interference with prospective economic advantage. Defendant's opening brief simply asserts that the common law does not apply extraterritorially, citing inapposite authority. Mot. (Dkt. No. 167) at 6 (citing *Diamond Multimedia Sys,. Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999)). Plaintiff cites no authority regarding the California common law's extraterritorial application. Without authority from the California courts or the California legislature, the Court will not presume that the California common law is meant to have extraterritorial effect. Accordingly, plaintiff's California common law claims are dismissed without leave to amend.

### 2. Michigan

Plaintiff does not allege that wrongful conduct occurred in Michigan nor does plaintiff allege that it suffered harm in Michigan. Defendant argues that Michigan statutory law applies extraterritorially "only when the legislature's intent is clear." Mot. (Dkt. No. 167) at 6. Defendant further argues that Michigan common law does not apply extraterritorially. *Id*. Plaintiff does not address defendant's arguments regarding the extraterritorial application of Michigan law.

Plaintiff cites no case law to support the proposition that a Michigan statute can be invoked by a non-resident plaintiff basing a claim on out-of-state conduct that caused out-of-state harm simply because the defendant resides in Michigan. Accordingly, the Court does not depart from

---

[3] Defendant also contends that if plaintiff can bring a claim under the CUTSA, that statute preempts other California claims arising out of the same facts. In light of the dismissal of the CUTSA claim, the Court does not reach the issue of preemption. However, the Court notes that "California's Uniform Trade Secrets Act 'occupies the field' of common law claims based on the misappropriation of trade secret," *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2011), and also preempts UCL claims that arise from the same facts as CUTSA claims. *AirDefense Inc. v. AirTight Networks, Inc.*, No. C 05-04615 JF, 2006 WL 2092053, at *5 (N.D. Cal. July 26, 2006).

12

the presumption that a "statute is intended to have no extraterritorial effect." *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 435 (1982) (citing 73 Am. Jur. 2d, Statutes, § 359, p. 492). *Sexton* holds that only the legislature can create exceptions to the general rule that the common law does not apply outside of a state's territorial jurisdiction. *See Sexton*, 413 Mich. at 434. Plaintiff does not cite authority establishing that the tort unfair competition or tortious interference with economic activity is subject to an exception. Accordingly, plaintiff's claims based on Michigan statutory and common law are dismissed without leave to amend.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's DTSA claim is dismissed with leave to amend.
2. Plaintiff's Lanham Act claim is dismissed with leave to amend.
3. Defendant's motion to dismiss plaintiff's UCL claim is denied.
4. Plaintiff's CUTSA claims are dismissed with leave to amend.
5. Plaintiff's California common law claims and Michigan statutory and common law claims are dismissed without leave to amend.

**If plaintiff wishes to amend the complaint, plaintiff must do so by May 8, 2017.**

**IT IS SO ORDERED**.

Dated: April 24, 2017

SUSAN ILLSTON
United States District Judge

13