United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAVE CONSULTING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRUVEN HEALTH ANALYTICS INC., <br><br> Defendants. | Case No. 15-cv-02177-SI <br><br> **ORDER DENYING DEFENDANT'S MOTION REGARDING THE DAMAGES OPINION TESTIMONY OF MICHAEL T. LEWIS** <br><br> Re: Dkt. No. 255 |

On October 6, 2017 the Court held a hearing on defendant's motion to exclude the testimony of plaintiff's damages expert. For the reasons set forth below, the motion is DENIED.

## BACKGROUND

In 2015, Cave Consulting Group, Inc. ("plaintiff") brought suit against Truven Health Analytics Inc. ("defendant") for patent infringement. Plaintiff alleges that defendant's products Advantage Suite and Physician Performance Assessment ("PPA") infringe U.S. Patent 8,768,726 ("the '726 patent").

Plaintiff seeks damages sufficient to compensate it for defendant's alleged infringement, to be calculated by a reasonable royalty. To prove damages, plaintiff retained Michael T. Lewis to calculate a reasonable royalty for the use of the infringed '726 patent. To do so, Mr. Lewis used the hypothetical negotiation approach. Mr. Lewis analyzed the data using the fifteen *Georgia–Pacific* factors[1] to determine the reasonable royalty the parties would have agreed to during a

---

[1] The district court in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), laid out factors that may be relevant in determining a reasonable royalty. The Federal Circuit has endorsed the use of these factors as a reliable method of estimating patent damages. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003).

hypothetical negotiation. Lewis Report at 8 (Motion Ex. 1).

Pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), defendant has moved to exclude the testimony of Mr. Lewis. Defendant challenges the methodology used by Mr. Lewis in determining the reasonable royalty.

**LEGAL STANDARD**

Federal Rule of Evidence 702 permits expert testimony where "(a) a scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) ("[Rule 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.").

The trial court is vested with the authority to make a "preliminary assessment of whether reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."). The court is instructed to focus "on the principles and methodology" employed by the expert and "not the conclusions they generate." *Daubert*, 509 U.S. at 595; *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*") ("[T]he test under *Daubert* is not the correctness of the expert's conclusions, but the soundness of his methodology."). "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

When assessing the reliability component of an expert's testimony, courts are encouraged to examine "(1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community." *Daubert*, 509 U.S. at 593-94. It is important to note, however, that "the test of reliability is *flexible* and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks and citation omitted). "The 'list of factors was meant to be helpful, not definitive,' and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the 'particular circumstances of the particular case.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Kumho Tire*, 526 U.S. at 150-152). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (citing *Daubert,* 509 U.S. at 596).

**DISCUSSION**

Defendant seeks to exclude the opinions and testimony of plaintiff's damages expert, Michael T. Lewis. As grounds for exclusion, defendant argues that Mr. Lewis violated *Daubert* by: (1) failing to use comparable licenses in calculating the reasonable royalty rate; and (2) failing to apportion out the value of the patented feature from the product's entire value in calculating the royalty base. The Court concludes that defendant's challenges go to the weight rather than the admissibility of Mr. Lewis's testimony and accordingly DENIES defendant's motion.

Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324 (Fed. Cir. 2009)).

1     "A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate." *Virnetx*, 767 F.3d at 1326.

## I. Reasonable Royalty Rate

Defendant argues that Mr. Lewis's should not have relied on plaintiff's commercial software licenses in determining a reasonable royalty rate, characterizing them as "legally irrelevant." Defendant argues that the commercial licenses are not sufficiently comparable to the hypothetical license that would have been reached between the parties for a license to the '726 patent because the commercial software licenses use both the patented method and non-patented methods. Defendant states that the commercial licenses also reference five other patents not at issue, and that some of the licenses make no reference to the '726 patent. Defendant asserts that Mr. Lewis's analysis does not provide a reasonable royalty rate because Mr. Lewis made no effort to exclude the non-patented features and services of the commercial software licenses from his analysis.

In response, plaintiff argues that the licenses Mr. Lewis considered were sufficiently comparable to the hypothetical license. Plaintiff states that in determining the reasonable royalty rate, Mr. Lewis used the license fees that plaintiff charges for the commercial embodiment of the '726 patent (plaintiff's EfficiencyCare software and the Cave Grouper). Plaintiff asserts that the rates plaintiff charges to license these models are clearly relevant because the modules embody the claims of the '726 patent. Plaintiff also points out that the Federal Circuit does not require that Mr. Lewis only consider a straight license to the '726 patent (which does not exist). Plaintiff states that the licenses that do not mention the '726 patent are licenses that predate the issuance of the patent, but that those licenses still relate to the same underlying licensed software. Thus, plaintiff contends that the licenses relied on by Mr. Lewis were sufficiently comparable to the hypothetical license. The Court agrees that Mr. Lewis's use of the commercial licenses in his analysis does not render his expert opinion unreliable.

4

In attempting to establish a reasonable royalty rate, the "licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit." *Lucent*, 580 F.3d at 1325. "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). However, "any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent,* 580 F.3d at 1325 (quoting *Unisplay, S.A. v. American Electronic Sign Co., Inc.,* 69 F.3d 512, 517 (Fed. Cir. 1995)). "[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) (citing *Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1326 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc)).

Defendant asserts that *ResQNet.com, Inc. v. Lansa, Inc*. is instructive on this issue. 594 F.3d 860 (Fed. Cir. 2010). Defendant claims that in *ResQNet.com*, the Federal Circuit held that it was improper for the damages expert to consider licenses that covered not only the claimed technology, but also software products and source code. However, the Court agrees with plaintiff that defendant mischaracterizes the holding in *ResQNet.com*. The problem in *ResQNet.com* was not that the licenses covered both the claimed technology and the software products, but that some of the licenses were completely unrelated to the claimed technology. *ResQNet.com*, 594 F.3d at 870. The expert based the reasonable royalty rate on seven licenses, five of which had no relation to the claimed patent. *Id*. The five unrelated licenses did not mention the patent-in-suit or show any other discernable link to the claimed technology. *Id*. There was also a straight license to the claimed technology that was available to the expert. *Id*. Thus, there was no reason to use the unrelated licenses in calculating the reasonable royalty rate. The court was troubled by the fact that the expert clearly used the unrelated licenses to inflate the royalty rate into double figures. *Id*.

Here, the licenses that Mr. Lewis used in his calculation are related to the patent-in-suit, as the licenses are for the commercial embodiment of the '726 patent. Also, unlike in *ResQNet.com*, a straight license to the patent-in-suit does not exist, which is why Mr. Lewis used the commercial

5

licenses. Therefore, the holding in *ResQNet.com* does not preclude plaintiff's expert from using the commercial licenses in determining the reasonable royalty rate.

The Court agrees with plaintiff that this case is more akin to *Activevideo Networks v. Verizon Communications*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). In *Activevideo*, the plaintiff's expert relied on a license that covered both the plaintiff's patent and software services. 694 F.3d at 133. The defendant argued that it was improper to consider the license because the expert did not make any attempt to separate the value of the patent from the value of the services. *Id*. The Federal Circuit held that "any failure on the part of [the plaintiff's] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *Id.* (citation omitted); *see also Virnetx*, 767 F.3d at 1330 (district court did not abuse its discretion in permitting an expert to rely on six licenses where four related to the patents-in-suit and the others were drawn to related technology because the jury could evaluate the relevance of the licenses).

## II.     Entire Market Rule

In regard to the royalty base calculation, defendant argues that Mr. Lewis impermissibly calculated damages based on all of PPA's revenue rather than the portion attributable to the alleged infringing feature. In addition to the alleged infringing feature, which represents a cost analysis, PPA also includes a quality analysis, which allows users to run reports regarding the effectiveness of a physician's treatment. Defendant asserts that because PPA includes both allegedly infringing and non-infringing features, Mr. Lewis was required to determine the value added by the allegedly infringing feature and apportion out the value of the other features. Thus, defendant claims Mr. Lewis's opinion that no apportionment is required is incorrect as a matter of law.

In response, plaintiff argues that the entire market rule applies because the alleged infringing feature drives demand for defendant's entire product. Plaintiff states that Mr. Lewis cites a variety of evidence that he relied on in his report in concluding that the alleged infringing feature of defendant's product drives demand and/or substantially creates the value of the product. Plaintiff asserts that whether the entire market rule applies is a question for the jury, and if the jury

6

determines that apportionment is required, Mr. Lewis opined that 60% of the value of defendant's product should be apportioned to the alleged infringing feature. The Court agrees that defendant has not shown that Mr. Lewis's methodology is incorrect as a matter of law.

The entire market rule "allows for the recovery of damages based on the value of an entire apparatus containing several features, even though only one feature is patented." *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984). "A patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Versata Software, Inc. v. SAP Am., Inc.,* 717 F.3d 1255, 1268 (Fed. Cir. 2013) (citation omitted). "In the absence of such a showing, principles of apportionment apply." *Virnetx*, 767 F.3d at 1326. "In each case, district courts must assess the extent to which the proffered testimony, evidence, and arguments would skew unfairly the jury's ability to apportion the damages to account only for the value attributable to the infringing features." *Ericsson*, 773 F.3d at 1228.

The Federal Circuit has precluded experts from using the entire market rule in cases where the plaintiff failed to present evidence that the infringing feature drove the demand for the product. *See, e.g.*, *LaserDynamics*, 694 F.3d at 68 ("[plaintiff] failed to present evidence showing that the patented disc discrimination method drove demand for the laptop computers."); *Lucent*, 580 F.3d at 1332 ("[t]he evidence can support only a finding that the infringing feature contained in Microsoft Outlook is but a tiny feature of one part of a much larger software program."); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319 (Fed. Cir. 2011) (plaintiff conceded that customers did not buy Office or Windows because of Product Activation). On the other hand, in cases where the plaintiff provided evidence that the patented feature drove demand for the product, the Federal Circuit concluded that the jury was entitled to evaluate the evidence. *See, e.g.*, *Marine Polymer Technologies, Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1360 (Fed. Cir. 2012) ("evidence pertaining to the importance of [the patented feature] in [defendant]'s products and its significance for market demand" was sufficient to support a damages award based on the entire market value); *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997)

7

(defendant's own brochures emphasized plaintiff's patented feature, which provided "substantial evidence to support an award of a reasonable royalty based upon the cost of the entire [product].").[2]

Defendant cites to *Ericsson* multiple times, but the case is distinguishable from the facts presented here. In *Ericsson*, the Federal Circuit held that the value of the standard essential patent ("SEP") had to be apportioned because it was only a small part of the defendant's technology. *Ericsson*, 773 F.3d at 1232. However, the Federal Circuit further stated "[o]ur decision does not suggest that all SEPs make up only a small part of the technology in the standard. Indeed, if a patentee can show that his invention makes up 'the entire value of the' standard, an apportionment instruction probably would not be appropriate." *Id.* at 1233 (Fed. Cir. 2014) (citing *Garretson v. Clark,* 111 U.S. 120, 121 (1884)). *Ericsson* also dealt with issues unique to SEPs, and the court noted that apportionment is especially necessary in such cases because "widespread adoption of [SEPs] is not entirely indicative of the added usefulness of an innovation over the prior art." *Id.* Unlike in *Ericsson*, this case does not deal with SEPs, and this is not a case where the patented feature only makes up a small part of the defendant's technology.

Defendant also cites to *Cornell University v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279 (N.D.N.Y. 2009). However, in that case, the court stated that "[plaintiff] sought damages on [an] inflated base without offering additional market evidence that the claimed invention formed the basis for demand for the [defendant's product], or even the existence of a market for [defendant's product]. *Id.* at 287. This case is also distinguishable because here, plaintiff provided evidence that the patented feature drives demand for defendant's product. Thus, the evidence is properly left for the jury to weigh. To the extent defendant believes Mr. Lewis's opinions will confuse the jury, defendant will have an opportunity to address any such confusion through cross-examination.

---

[2] District courts have similarly held that if the expert provides evidence showing the infringing feature drives demand for the product, the evidence should be submitted to the jury. *See, e.g.*, *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F.Supp.2d 999, 1028 (S.D. Cal. 2011) ("Because [plaintiff] has presented evidence showing the importance of the allegedly patented technology to [defendant's] devices' ability to succeed in the marketplace, it has presented sufficient evidence from which a reasonable jury could find that the entire market value rule has been satisfied.").

8

Accordingly, defendant's motion to exclude the opinion and report of Mr. Lewis is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to exclude the expert testimony of Mr. Lewis. Dkt. No. 255.

**IT IS SO ORDERED**.

Dated: October 23, 2017

SUSAN ILLSTON
United States District Judge