UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAVE CONSULTING GROUP, INC.,<br>Plaintiff,<br>v.<br>TRUVEN HEALTH ANALYTICS INC.,<br>Defendant. | Case No. 15-cv-02177-SI<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND NONTAXABLE EXPENSES**<br>Re: Dkt. No. 348 |

On March 2, 2018, the Court held a hearing on the motion by defendant Truven Health Analytics ("Truven") for attorneys' fees and nontaxable expenses related to Truven's defense against plaintiff Cave Consulting Group's ("CCGroup") assertion of U.S. Patent No. 8,340,981 ("the '981 patent"). For the reasons set forth herein, the Court GRANTS in part Truven's motion as to CCGroup's liability for fees under 35 U.S.C. § 285. Truven is directed to recalculate its fees in accordance with this Order, and resubmit its request and supporting documentation no later than **April 6, 2018**. CCGroup may submit a response no later than **April 13, 2018**, and Truven may submit a reply by **April 20, 2018**. The Court will then take the matter under submission and issue an order shortly thereafter.

**BACKGROUND**

In December 2014, prior to filing this lawsuit, CCGroup sent Truven a letter listing the '981 patent, as well as five other patents, and asserting that "certain of Truven's products generally relate to the technology described and claimed in CCGroup's patents." Dkt. No. 348-11. Among the other patents listed were U.S. Patent No. 7,739,126 ("the '126 patent"), U.S. Patent No. 8,768,726 ("the '726 patent"), and U.S. Patent No. 8,340,981 ("the '981 patent"). *Id*.

The '126 patent issued from U.S. Patent Application No. 10/794,216 ("the '216 application"), having an effective filing date of March 2, 2004. Dkt. No. 358-8 ('126 Patent at cover page). The application giving rise to the '981 patent, U.S. Patent Application No. 13/012,219 ("the '219 application"), was filed on January 24, 2011, as a continuation-in-part ("CIP")[1] of another application that was in turn a continuation[2] of the '216 application. Dkt. No. 1-1 ('981 Patent at cover page). The '981 patent claims priority to the '216 application. *Id.* The '726 patent was filed in 2013, and claims priority to the '216 and the '219 applications. Dkt. No. 1-2 ('726 Patent at cover page).

On May 14, 2015, CCGroup filed this lawsuit alleging that Truven infringed numerous claims of the '726 patent and claims 13 and 20 of the '981 patent. Dkt. No. 1. In its infringement contentions, CCGroup expressed its intent to "claim a priority date at least as early as March 2, 2004" for all asserted claims, and identified "its own Marketbasket System as practicing at least claims 13 and 20 of the '981 patent . . . ." Dkt. No. 348-6 at 3:18-22. In response to Truven's interrogatories, CCGroup again stated that the "asserted claims are entitled to a priority date of March 2, 2004" and identified the "Marketbasket System as practicing and/or embodying the limitations of the asserted claims." Dkt. No. 348-5 at 4:19-5:2. CCGroup later stated in its response to Truven's Request for Admissions that "its own system, which existed prior to March 2, 2004, used medical claims data to form episodes of care." Dkt. No. 348-7 at 3:3-4. It is not disputed that as early as March 14, 2006, CCGroup made its Marketbasket System publicly available. Dkt. No. 348-8.

On November 13, 2015, Truven served its invalidity contentions on CCGroup. Dkt. No. 362-3. In those contentions, Truven asserted that the priority date for the '981 patent was the

---

[1] A continuation-in-part application is "an application filed during the lifetime of an earlier . . . application, repeating some substantial portion or all of the earlier . . . application and adding matter not disclosed in the earlier . . . application." Manual of Patent Examining Procedure ("MPEP") § 201.08 (9th ed. Oct. 2015).

[2] A continuation application is "an application for the invention(s) disclosed in a prior-filed . . . application . . . . The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application." MPEP § 201.07.

2

filing date of the '981 patent application, January 24, 2011, and that the priority date could not be March 2, 2004, because (a) the '981 patent issued from a CIP of an earlier application and (b) the patent claims encompassed new matter not disclosed in the earlier applications. Dkt. No. 362-3. Specifically, Truven asserted,

> The '981 patent was filed on January 24, 2011 as a continuation-in-part of application No. 12/769,090 ("the '090 application"), filed on April 28, 2010, now abandoned. The '090 application is a continuation of application No. 10/794,216 ("the '216 application"), filed on March 5, 2004, now issued as U.S. Patent Number 7,739,126.[3]
>
> In order for the '981 patent to claim priority to the '090 and '216 applications, the claims in the '981 patent must be "supported by the specification and claims of the parent application." M.P.E.P. § 706.02(VI); *see also Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334-1335 (Fed. Cir. 2011).
>
> The claims in the '981 patent are not supported by the specification and claims of the parent applications. For example, all independent claims in the '981 patent include at least the new matter directed to "variable window periods" and "static window periods." *See* U.S. Pat. No. 8,340,981, claims 1, 11, 12, 13, 20, 21, col. 45, l. 44 – col. 48, l. 5, Figs. 3-5. This new matter directed to "variable window periods" and "static window periods" is not mentioned, disclosed, or supported in the parent '090 and '216 applications.
>
> Thus, all claims in the '981 patent "have an effective filing date equal to the filing date of the new application," which is January 24, 2011. *See* M.P.E.P. § 706.02(VI).

*Id.*

Five days later, on November 18, 2015, CCGroup filed an amended complaint that continued to allege that the '981 patent was valid and that Truven infringed it. Dkt. No. 44 at ¶¶ 10, 17. CCGroup also attached as an exhibit a Certificate of Correction ("Certificate") for the '981 patent issued by the U.S. Patent and Trademark Office ("PTO") on September 22, 2015.[4] *Id.* at ¶ 8. The Certificate corrected a phrase in claim 13, one of the claims asserted in this case, to replace "variable window periods episodes of care" with "variable window periods to identify episodes of care." Dkt. No. 44-2.

---

[3] The '126 patent claims the benefit of Provisional Application Ser. No. 60/549,601, filed March 2, 2004.

[4] Truven notes that CCGroup submitted the request for the Certificate one month after filing the suit against Truven, on June 12, 2015. Dkt. No. 348 at 4 n.3; Dkt. No. 348-10.

3

On October 12, 2016, Truven informed CCGroup that the priority date for the '981 patent was January 24, 2011, and that the CCGroup Marketbasket System therefore invalidates its patent under 35 U.S.C. § 102(b).[5] Dkt. No. 348 at 2:20-22; Dkt. No. 358 at 5:8-9. CCGroup states that it notified Truven of its intent to drop the '981 patent from suit the same day. Dkt. No. 358 at 5:8-10. CCGroup states that it informed the Court of its intent to withdraw the '981 patent at a case management conference held on October 14, 2016. *Id.* at 5:10-12; Dkt. No. 85. The Court's minutes for that conference states that "Counsel are in the process of discussing the possibility of withdrawing the '981 patent and filing an amended complaint." Dkt. No. 85. CCGroup states that it offered to give Truven a covenant not to sue on the existing claims of the '981 patent, but that Truven rejected the offer. Dkt. No. 358 at 6:2-6.

On November 4, 2016, CCGroup moved for leave to file an amended complaint, in which CCGroup would withdraw its claim under the '981 patent. Dkt. No. 95. In its opposition to that motion, Truven noted that it "proposed a joint dismissal with prejudice, with an unrestricted covenant not to sue and payment of the fees Truven has incurred in defending against the '981 Patent," and that CCGroup ignored the proposal. Dkt. No. 110 at 1:11-14.

On December 2, 2016, CCGroup filed a petition with the Patent and Trademark Office ("PTO") requesting ex parte reexamination of the '981 patent because there were substantial new questions as to the validity of the '981 patent due to, inter alia, questions about whether the '981 patent was entitled to the priority date of the '126 date and whether the '981 patent was invalidated by prior art. Dkt. No. 129-1. CCGroup's request for reexamination proposed amending the independent claims of the '981 patent to delete "the recitation of the 'variable window periods,'" and thus, according to CCGroup's request, "resulting in all of the subject matter of independent claims 1, 11, 12, 13, 20, and 21 as amended being conclusively supported by the disclosure of the parent '126 patent." *Id.* at 7.

This Court granted CCGroup's motion for leave to file an amended complaint on December 22, 2016, under the conditions that the withdrawal of the claim under the '981 patent

---

[5] A patent is invalid if the invention was publically used or on sale in this country for more than one year before the priority date. 35 U.S.C. § 102(a)-(b).

4

was with prejudice and that CCGroup execute a covenant not to sue Truven on the existing claims of the '981 patent. Dkt. No. 136 at 2:4-6.

On January 9, 2017, CCGroup filed another motion for leave to file an amended complaint, requesting permission to add claims related to misappropriation of trade secrets. Dkt. No. 138. CCGroup argued that during discovery it had obtained evidence showing Truven had misappropriated CCGroup's trade secrets. *Id.* at 2:16-27. The Court granted CCGroup's motion. Dkt. No. 156.

On February 21, 2017, CCGroup filed its third amended complaint, which removed the claim under the '981 patent and added the trade secret misappropriation claims. Dkt. No. 159. Truven moved to dismiss the newly added claims and the Court granted the motion in part and denied it in part. Dkt. Nos. 167, 205. Subsequently, CCGroup dropped the non-patent claims, leaving only its claim under the '726 patent. Dkt. No. 223. On December 15, 2017, this Court granted Truven's motion for summary judgment of invalidity of the '726 patent claims under 35 U.S.C. § 101. Dkt. No. 342.

On January 18, 2018, Truven moved for attorneys' fees and nontaxable expenses related to its defense against the '981 patent, pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and under the inherent power of this Court. Dkt. No. 348. Truven seeks to recover fees and expenses related to the '981 patent between the day CCGroup sued Truven (May 14, 2015) and when CCGroup filed its third amended complaint withdrawing the claim under the '981 patent (February 21, 2017). Dkt. No. 348 at 9:19-22, 11:2-5. During this period, Truven estimates it incurred total patent-related fees of $816,721.84 and nontaxable expenses of $38,956.06. *Id.* As the '981 and '726 patents are related, Truven notes that "much of the same analysis and discovery applie[d] to both patents." *Id.* at 10:7-8. Thus, Truven requests 25% of the fees and expenses related to all patent work, or "$204,180.46 in fees and $9,739.02 in nontaxable expenses, for a total of $213,919.48." *Id.* at 11:8-10.

# DISCUSSION

I. **Attorneys' fees under 35 U.S.C. § 285**

   A. **Legal Standard**

Section 285 of the Patent Act provides that a court may award "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. An exceptional case under § 285 is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

Under its discretion, a district court may consider factors such as "the litigant's objective unreasonableness in litigating the case, subjective bad faith, frivolousness, motivation, and the need in particular circumstances to advance considerations of compensation and deterrence." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (citing *Octane Fitness*, 134 S. Ct. at 1756-56, 1756 n.6) (internal quotation marks omitted). A "case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 134 S. Ct. at 1757. Where a "patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990); *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993), *decision clarified on reh'g*, 15 F.3d 1076 (Fed. Cir. 1994) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless."). The movant must show that it is entitled to fees under § 285 by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

   B. **Analysis**

It is undisputed that Truven is the prevailing party with regard to the '981 patent

1  infringement claims. Truven argues that this case is "exceptional" under 35 U.S.C. § 285 because
2  CCGroup asserted the '981 patent when CCGroup knew or should have known that the patent was
3  invalidated by its own product. Truven contends that CCGroup chose to file the '981 application
4  as a continuation-in-part, which by definition means that it has "add[ed] matter not disclosed in
5  the said earlier nonprovisional application." MPEP § 201.08. Truven argues that when CCGroup
6  filed the '981 patent application, it added "variable window periods," which was not disclosed in
7  the earlier '126 patent. *See* Dkt. No. 348-9 at 67-68 (redline comparison of the '126 and '981
8  patent specifications showing "variable window periods" as new matter added to the '981 patent).
9  Thus, Truven argues, CCGroup should have known the '981 patent's priority date was January 24,
10 2011, and not March 5, 2004. Truven also argues that CCGroup repeatedly claimed that its
11 Marketbasket System product practiced the asserted claims of the '981 patent, and thus that
12 CCGroup knew or should have known that its product, which was publicly available by at least
13 March 14, 2006, invalidated the '981 patent.

14 CCGroup argues that this case is not exceptional because the "[t]he § 102(b) issue arises
15 from a technical oddity relating to the structure of the '981 patent claims." Dkt. No. 358 at 8:8-9.
16 CCGroup argues that both the original '126 patent and the '981 patent describe the CCGroup
17 Marketbasket System, and that "[i]t is counterintuitive to think that the same product, described in
18 both the original patent and the child patent, can be prior art to the child patent." *Id.* at 12-15.
19 CCGroup asserts that the phrase "a set consisting of static window period and variable window
20 periods" recited in the '981 patent claims uses a "claiming convention" called a "Markush" group,
21 which sets forth two or more alternatives of a group. *Id.* CCGroup argues that "[t]hus, the '126
22 patent discloses an embodiment of the claims in the later-filed '981 patent"—"static window
23 period"—but that "[t]he problem, however, is that the '126 patent does not describe every
24 embodiment of the '981 patent claims, because the 'variable window periods' were first described
25 in the later-filed application." *Id.* at 8:23-9:6. CCGroup argues that because of this "technical
26 oddity" in how alternative embodiments were claimed, the '126 patent disclosed "a system of the
27 sort claimed" in the '981 patent, but was prior art under § 102(b). *Id.*

28 The Court agrees with Truven and finds that this case is exceptional because CCGroup

7

knew or should have known that the '981 patent was invalid prior to filing suit. "Under 35 U.S.C. § 120, 'a claim in a later application receives the benefit of the filing date of an earlier application so long as the disclosure in the earlier application meets the requirements of 35 U.S.C. § 112, ¶ 1, including the written description requirement, with respect to that claim.'" *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011) (quoting *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008)). The MPEP states that when a patent "applicant files a continuation-in-part whose claims are not supported by the parent application, the effective filing date is the filing date of the child CIP." MPEP § 2133.01. Further, any "prior art disclosing the invention . . . more than 1 year prior to the filing date of the child will bar the issuance of a patent under . . . 35 U.S.C. [§] 102(b)." *Id.*

Here, CCGroup chose to file the '981 patent as a continuation-in-part, presumably at least in part because the '981 application added new material—the "variable window periods"— that was not disclosed in the parent application (the '216 application, which issued as the '126 patent). Dkt. No. 348-9 at 67-68. In order for the asserted claims of the '981 patent to receive the benefit of the filing date of the '126 patent, there must be adequate written description in the '126 patent disclosure to support the asserted claims. CCGroup's "technical oddity" argument acknowledges that the "variable window periods" were first described in the '981 patent application, and therefore that there is no written description support for the independent claims of the '981 patent in the '126 patent disclosure. Accordingly, the '981 patent was not entitled to the earlier filing date, and CCGroup could and should have recognized, based on the relationship between the '981 and '126 patents, that the priority date of the '981 patent was January 24, 2011. *See Cordance Corp.*, 658 F.3d at 1334-35 (patent claims in later application could not claim priority to earlier application because asserted claims in later patent was not supported by disclosure in earlier patent).

Further, there was ample evidence to show the Marketbasket System was used and publicly available more than one year before January 2011, the filing date of the '981 patent. In its communications with Truven, CCGroup repeatedly asserted that the Marketbasket System practiced "the limitations of the asserted claims," which included "claims 13 and 20 of the '981

8

patent." *See* Dkt. Nos. Dkt. No. 348-5, 348-6. CCGroup also admitted that its system "existed prior to March 2, 2004." *See* Dkt. No. 348-7. It is undisputed that the Marketbasket System was publicly available as early as March 2006. *See* Dkt. No. 348-8. Therefore, CCGroup knew that its own product practiced the asserted claims of the '981 patent as early as March 2004, and made the product publicly available as early as March 2006. CCGroup does not dispute these facts.

Asserting patent claims that "a cursory review of the asserted patent's prosecution history would have revealed" to be invalid may constitute "gross negligence or studied ignorance, neither of which justifies placing the burden" of litigation on the defendant. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SA CV 04-00689 MRP (VBKx), 2007 WL 6137003, at *5 (C.D. Cal. Apr. 16, 2007) ("*Alaris*"), *aff'd*, 558 F.3d 1368 (Fed. Cir. 2009). In *Alaris*, the plaintiff asserted patent claims that were identical to claims of an earlier-issued, related patent, and therefore were invalid for double-patenting. *Id.* The *Alaris* court found that the plaintiff was "at best grossly negligent" in failing to notice the double-patented claims, despite the issue being overlooked by the PTO during prosecution of the patent application. *Id.* Both patents at issue were the plaintiff's patents, derived from the same application, shared the same specification, had "the same inventor," and were filed and prosecuted "by the same patent lawyers." *Id.* These facts suggested that the plaintiff "did not perform any reasonable investigation of the asserted patents and their relatedness before initiating the litigation . . . ." *Id.* The court found that the plaintiff "must have been acutely aware of the interrelatedness of the two patents" because "immediately prior to filing" the suit, the plaintiff had requested from the PTO a Certification of Correction that "tied" the prosecution history of one of the two patents to the second patent and their shared filing date. *Id.* The court concluded that the plaintiff "should have known" the "obvious flaws" of double-patenting in its asserted patent before and after commencement of litigation. *Id.*; *see also Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014) (finding the case exceptional where the plaintiff should have known that the asserted patent was invalid for failure to file a terminal disclaimer to overcome obviousness-type double patenting, and the plaintiff was unreasonable in conducting its litigation).

The Court finds CCGroup's failure to recognize that its own Marketbasket System was invalidating prior art for the '981 patent, based on the patent's relationship with the '126 patent, was grossly negligent, just as the *Alaris* court found the plaintiff was grossly negligent when it failed to "perform a reasonable investigation of the asserted patents and their relatedness" that would have revealed invalidity of the asserted claims "before initiating the litigation." *See Alaris*, 2007 WL 6137003, at *5. CCGroup owned both the '981 and '126 patents, both patents were derived from the same parent application (the '216 application), and shared a common inventor (Douglas Cave),[6] just as in *Alaris*, where the plaintiff owned both patents at issue, the patents were derived from the same application and had the same inventor. *See* '981 Patent at cover page; '126 Patent at cover page; *Alaris*, 2007 WL 6137003, at *5. Further, in June 2014, before filing this lawsuit, CCGroup acknowledged in a filing with the PTO that the '219 application (which issued as the '981 patent) included new matter. *See* Dkt. No. 362-2 at 8 (in connection with the prosecution of a later-filed application, Application Number 14/269,084, CCGroup asserted: "The matter in these claims [in the '084 Application] does not include any new matter introduced in CIP parent U.S. Patent Application Number 13/012,219, filed 01/24/2011, and issued as U.S. Patent Number 8,340,981. Rather, these claims include only matter disclosed in parent U.S. Patent Application Number 10/794,216, filed 3/5/2004, and issued as U.S. Patent Number 7,739,126."); *Alaris*, 2007 WL 6137003, at *5. Thus, CCGroup must have been aware of the implications of the CIP filing and the relationship between the '981 and '126 patents, just as the *Alaris* court found that the plaintiff "must have been acutely aware of the interrelatedness of the two patents" at issue there, based on the plaintiff's earlier representations to the PTO. *See Alaris*, 2007 WL 6137003, at *5.

---

[6] The '126 patent has an additional inventor, Kyu Sung Cho. *See* Dkt. No. 129-1 at 12.

CCGroup argues that the priority date of the '981 patent "escaped the notice of both the applicant and the Examiner during prosecution," that the "issue was just so subtle as to pass undetected by the Examiner," that the "Examiner endorsed the claims and allowed them to issue without amendment," and that CCGroup relied on the statutory presumption of validity of issued patents. *Id.* at 9:8-10:10. CCGroup cannot place the burden of determining the proper priority date of the '981 patent on the PTO. As an initial matter, the MPEP provides that the patent examiner is not required to determine whether a CIP application is entitled to the priority date of the parent application, unless the applicant relies on that priority date in a proceeding before the PTO. *See* MPEP § 201.08.[7] Here, there is no evidence that the CCGroup relied on the priority date of the '216 application during prosecution of the '981 patent application, so the patent examiner had no reason to look into the issue.

Further, CCGroup could not have had a presumption of validity of the '981 patent priority date when that issue was not raised during prosecution. "The rebuttable presumption of validity that attaches to an issued patent extends to a CIP application's claim to the priority filing date of a parent application in cases where the PTO explicitly has made a finding that the CIP application is entitled to the benefit of that date." *Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, 741 F. Supp. 2d 865, 872-73 (N.D. Ill. 2010) (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008)). Here, CCGroup has not presented any evidence that the PTO made an explicit finding of the '981 patent's entitlement to the '216 application filing date. Thus, no presumption of validity attached to the claimed priority date of the '981 patent.

CCGroup also asserts that it "immediately withdrew" the claim related to the '981 patent "once the issue arose." Dkt. No. 358 at 8:3. CCGroup relies on *Intellectual Ventures I LLC v. Capital One Financial Corporation*, No. 1:13CV0740 (AJT/TCB), 2015 WL 7283108, at *6 (E.D. Va. Nov. 17, 2015), for the proposition that a case is not exceptional where a patentee acts with

---

[7] "The Office does not need to make a determination as to whether the requirement of 35 U.S.C. 120 that the earlier nonprovisional application discloses the invention of the second application in the manner provided by 35 U.S.C. 112(a) [including the written description requirement] is met unless the filing date of the earlier nonprovisional application is relied upon in a proceeding before the Office." MPEP § 201.08.

11

"reasonable dispatch" in dismissing claims when the merits become clear. Dkt. No. 358 at 8:3-6.

The Court finds that *Intellectual Ventures* is distinguishable from the present case. There, the plaintiff asserted five patents against the defendant, but voluntarily dismissed most of the claims after claim construction, in part because the plaintiff found proving defendant's liability to be "problematic." *Intellectual Ventures*, 2015 WL 7283108, at *1. However, the plaintiff realized the weakness of its case only "through the Court's rulings." *Id.* at * 6. Here, the § 102(b) issues regarding the '981 patent did not present themselves as a result of the Court's rulings, but rather were present before the inception of this lawsuit and should have been discovered based upon a sufficient pre-filing investigation.

The Court also disagrees with CCGroup's characterization that it withdrew its claim under the '981 patent with "due dispatch." On November 13, 2015, Truven served its invalidity contentions informing CCGroup of its position that the effective filing date of the '981 patent was January 24, 2011. Dkt. No. 362-3. Thus, by November 13, 2015, CCGroup had been provided with actual notice of all of the information necessary to conclude that the Marketbasket System was invalidating prior art for the '981 patent. Notwithstanding this information, CCGroup filed an amended complaint shortly thereafter which continued to allege infringement of the '981 patent. Dkt. No. 44. CCGroup did not withdraw its claim under the '981 patent for almost a year, and did so only after Truven notified CCGroup of the § 102(b) issue in October 2016, and after litigation regarding the proper method of dismissal. Dkt. No. 348 at 2:20-22; Dkt. No. 358 at 5:8-9. Under these circumstances, the Court finds this case exceptional. *See Bayer*, 851 F.3d at 1306 (affirming the district court's award of attorneys' fees where the district court found the plaintiff's conduct in litigating the case "in the face of evidence that contradicted its [litigation position] was objectively unreasonable").[8]

---

[8] Because this case is exceptional under § 285, the Court finds it unnecessary to address Truven's alternative requests for fees and expenses pursuant to 28 U.S.C. § 1927 or the Court's inherent power.

12

## II. Reasonable Fee Award

In the event the Court awards Truven fees and costs, the parties disagree regarding the proper methodology to calculate a reasonable fee. Truven contends that CCGroup's assertion of the '981 patent at most doubled the amount of work, and Truven "conservative[ly]" requests 25% of the total fees for patent-related work incurred from the filing of the complaint until the '981 patent was withdrawn to account for the "overlap in defending against the two related patents." Dkt. No. 362 at 6:24-7:4.[9] Truven urges the Court to allocate fees using "a global fee analysis to balance all interests rather than a more granular analysis which will consume time and resources unnecessarily." Dkt. No. 348 at 10:12-11:1.

CCGroup opposes Truven's requested award amount on two grounds. First, CCGroup argues that fees should be allocated under a "but-for" standard and that Truven should not be compensated for any fees "it would have incurred even if the '981 patent had never been asserted." Dkt. No. 358 at 11:13-17. Second, CCGroup argues that Truven's work related to the '981 patent after October 12, 2016, was "unnecessary and the result of Truven's own choice" because Truven knew the patent was not at issue after that date. Dkt. No. 358 at 11:13-16, 13:12-25.

### A. "But-for" Standard

In *Fox v. Vice*, the Supreme Court held that when a plaintiff asserts a mix of frivolous and non-frivolous claims, the defendant may be entitled to recover only costs "incurred because of, but only because of, [the] frivolous claim." 563 U.S. 826, 836 (2011). In *Fox*, the plaintiff sued the defendant under state law and also asserted federal civil rights claims under 42 U.S.C. § 1983. *Id.* at 829-30. After discovery, the plaintiff admitted the federal claims were not valid, and the district

---

[9] In compliance with Civil Local Rule 54-5(b)(2)-(3), Truven submitted: A summary of tasks performed by each person involved (Dkt. No. 348-3); a summary of the time spent by each person and his or her hourly rates (Dkt. No. 348-2); a statement describing how time records were kept (Dkt. No. 348-1 at ¶¶ 3-4); a description of the relevant qualifications and experience (Dkt. No. 348-4); and report indicating the customary hourly charges of IP litigation in the San Francisco Bay Area (Dkt. No. 348-14). Dkt. No. 348-1; Dkt. No. 362 at 7:8-20. All fees and nontaxable expenses are related to the patent claims, and exclude expenses related to non-patent claims. *Id.* at 11:2-5.

13

1  court dismissed them with prejudice. *Id.* at 830. After the state-law claims were remanded to state
2  court, the defendant moved for attorney's fees under § 1988, which allows award of "reasonable
3  attorney's fee to a prevailing party in certain civil rights cases." *Id.* at 829-30. In granting the
4  defendant's fees for defending the entire suit in federal court, the district court had found that
5  allocation of costs was unnecessary because the "various claims arose out of the same transaction
6  and were so interrelated that their prosecution or defense entailed proof or denial of essentially the
7  same facts." *Id.* at 831. The Supreme Court reversed and held that the district court must
8  "determine whether the fees requested would not have accrued but for the frivolous [federal]
9  claim." *Id.* at 839-40. There were two main policy reasons underlying that conclusion. First, the
10 Supreme Court found that the "relevant purpose of § 1988 is to relieve defendants of the burdens
11 associated with fending off frivolous litigation." *Id.* at 836. Second, § 1988 did not warrant
12 windfalls that the defendant would receive under a "more permissive test." *Id.* at 837. The
13 Supreme Court has held that "our case law construing what is a 'reasonable' fee applies
14 uniformly" to all federal fee shifting statutes that permit the award of reasonable attorney fees to a
15 prevailing party. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

16   This Court finds that the "but for" standard applies, and thus Truven is entitled to recover
17 only those fees and costs it incurred because of CCGroup's assertion of the '981 patent, such as
18 fees related to infringement and invalidity arguments specific to the '981 patent, and fees related
19 to the motion for attorneys' fees. The Court notes that Truven does not actually dispute that the
20 "but for" standard applies. Instead, Truven asserts that its request for 25% of the total patent fees
21 incurred during the period the '981 patent was at issue is a "reasonable and conservative
22 approach" to determining what fees and costs are attributable to the '981 patent. However, Truven
23 acknowledges that given the substantial similarity between the '726 and '981 patents, much of the
24 time spent litigating this case was applicable to both patents. *See* Dkt. No. 362 at 8:6-9:7 (Truven
25 discussing its work on various issues). The Court finds that while Truven's 25% flat rate request
26 is not unreasonable in theory, Truven has not cited any authority that would permit the Court to
27 award fees under that methodology. The Court further finds that the supporting documentation
28

14

submitted by Truven does not satisfy the "but-for" standard.[10] Accordingly, the Court directs Truven to submit a revised fee and cost request supported by documentation that seeks only those fees and expenses that were incurred as a result of defending against CCGroup's claims under the '981 patent.[11]

**B.     Time Period Eligible for Fee Award**

CCGroup also contends that Truven should not be compensated for work done after CCGroup informed Truven of its intention to withdraw the '981 patent claim in October 2016. CCGroup cites *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1336 (Fed. Cir. 2017), for the proposition that formal withdrawal of a claim is not required to find it withdrawn when the parties and the court know that the defendant intends to drop its claim.

The Court finds that CCGroup's reliance on *Romag* is misplaced. In *Romag*, the district court had "concluded that [the defendant] declined to abandon [its] defenses until after trial," and that the "failure to formally withdraw its . . . invalidity defenses until after the close of evidence" was a "key factor for awarding fees to" the plaintiff. *Id.* at 1336. On appeal, the Federal Circuit reversed the fee award, holding that the district court had "clearly erred" in finding that the defenses were not withdrawn until after trial because the record showed there was "full awareness between the parties and the district court that the patent invalidity defenses were withdrawn before trial." *Id.* at 1338. The Federal Circuit additionally noted that the district court had made no finding that the defendant's invalidity defenses were objectively unreasonable. *Id*.

Here, unlike in *Romag*, the Court has concluded that the assertion of the '981 patent renders this case exceptional so as to warrant a fee award. Further, although CCGroup informed Truven in October 2016 that it intended to withdraw the '981 patent, a dispute regarding the '981

---

[10] At the hearing, Truven's counsel stated that two timekeepers independently arrived at the 25% estimate based on their review of time entries.

[11] To the extent that CCGroup asserts that Truven should only be permitted to recover fees and costs for work relating to the "maximum duration rule" recited in the '981 patent claims (and not recited in the '726 patent), the Court disagrees. Although it is true that much of the work on the patent claims overlapped, there may be other work specific to the '981 patent that would not have been performed but for the inclusion of that patent in this case.

15

patent continued to exist because the parties could not agree regarding the appropriate mechanism for dismissal of the '981 patent claims, thus requiring further litigation until the '981 claims were dismissed in February 2017. The Court ultimately agreed with Truven that the dismissal should be with prejudice and under the condition that CCGroup execute a covenant not to sue Truven on the existing claims of the '981 patent. Under the circumstances of this case, the Court finds that the relevant time period for awarding a reasonable fee award related to defending against the '981 patent is between May 14, 2015 and February 21, 2017.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part Truven's motion for attorney's fees and nontaxable expenses pursuant to 35 U.S.C. § 285. Truven is directed to recalculate its fees in accordance with this Order, and resubmit its request and supporting documentation no later than **April 6, 2018**. CCGroup may submit a response no later than **April 13, 2018**, and Truven may submit a reply by **April 20, 2018**. The parties may submit the additional briefing in the form of letter briefs supported by declarations and exhibits. The Court will take the matter under submission and issue an order regarding the fee award shortly thereafter.

**IT IS SO ORDERED**.

Dated: March 14, 2018

SUSAN ILLSTON
United States District Judge